UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
UPSTATE CELLULAR NETWORK, D/B/A
VERIZON WIRELESS,

                       Plaintiff,

    -v-                                    5:16-CV-1032
                                           (DNH/TWD)
CITY OF AUBURN, NEW YORK; CITY COUNCIL
OF THE CITY OF AUBURN, NEW YORK;
PLANNING BOARD OF THE CITY OF AUBURN,
NEW YORK; ZONING BOARD OF APPEALS OF
THE CITY OF AUBURN, NEW YORK; BRIAN
HICKS, CODE ENFORCEMENT OFFICER OF
THE CITY OF AUBURN, NEW YORK,

                       Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| NIXON PEABODY LAW FIRM<br>Attorneys for Plaintiff<br>Key Towers at Fountain Plaza<br>40 Fountain Plaza, Suite 500<br>Buffalo, New York 14202 | LAURIE S. BLOOM, ESQ. |
| CITY OF AUBURN<br>OFFICE OF CORPORATION COUNSEL<br>Attorneys for Defendants<br>Memorial City Hall<br>24 South Street<br>Auburn, New York 13021 | STACY L. DEFORREST, ESQ. |

DAVID N. HURD
United States District Judge

## MEMORANDUM, DECISION and ORDER

**I.**     **INTRODUCTION**.

      Plaintiff Upstate Cellular Network, doing business as Verizon Wireless ("plaintiff" or

"Verizon") filed this action on August 23, 2016. Verizon asserts that the defendants, the City of

Auburn ("Auburn"), the City Council of the City of Auburn, New York ("City Council"), Planning

Board of the City of Auburn, New York ("Planning Board"), Zoning Board of Appeals of the City

of Auburn, New York ("Zoning Board") and Brian Hicks, Code Enforcement Officer of the City of Auburn, New York ("Hicks", and collectively, the "defendants"), improperly failed to act on its application to construct and operate a wireless telecommunications site in violation of the Telecommunications Act of 1996, 47 U.S.C. § 332 *et seq.* (the "TCA") and the Federal Communications Commission's (the "FCC") orders, rules and regulations. Plaintiff seeks declaratory judgment and injunctive relief. See Complaint. Presently under consideration are competing motions for summary judgment pursuant to Federal Rule of Civil Procedure 56 by plaintiff and defendants. The matter is fully briefed and oral argument was held in Utica, New York on June 23, 2017.

## II.     **FACTUAL BACKGROUND**.

The following facts are gleaned from the parties' submissions, including the statements submitted pursuant to Northern District Local Rule 7.1. Much of the factual background regarding this case is not in dispute.

Verizon is a wireless telecommunications licensee of the FCC and provides commercial mobile services and personal wireless services throughout New York State. See Defs.' Rule 7.1 Response, at ¶¶ 1, 8. On or about March 3, 2016, Verizon mailed an application (the "Application") to the defendants seeking site plan approval from the Planning Board and a use variance special permit from the Zoning Board. Id. at ¶ 44. The Application sought to construct and operate a wireless telecommunications facility, consisting of a 100 foot high monopole tower and corresponding site improvements, on property located at 246 Franklin Street in the City of Auburn (the "Site"). Id. at ¶¶ 47-48.

Additionally, on March 3, 2016, the City Council passed a six month moratorium prohibiting "the acceptance and review of new applications seeking approval for new telecommunication facilities and towers" in Auburn. See Moratorium Ordinance. On March 4,

2016, defendants, through its attorneys, returned the Application to Verizon stating that the moratorium precluded filing or consideration of the Application. See Defs.' Rule 7.1 Response, at ¶ 49. On April 4, 2016, plaintiff resubmitted the Application to defendants, citing its belief that defendants' action was required and urged defendants to proceed with its consideration. See April 4, 2016 Letter. On April 8, 2016, counsel for Auburn wrote to plaintiff and again declined to accept or process the Application. See April 8, 2016 Letter. On May 3, 2016, counsel for Verizon again wrote to defendants requesting consideration of the Application, however, the defendants did not accept or act on the Application. See May 3, 2016 Letter; Defs.' Rule 7.1 Response, at ¶ 57. On or about May 4, 2016, counsel for plaintiff and defendants held a telephone conference where defendants expressed Auburn's willingness to accept and consider plaintiff's Application after the moratorium expired and the City of Auburn Code of Ordinances ("City Code") was amended. See Defs.' Rule 7.1 Response, at ¶ 59.

On August, 23, 2016, Verizon commenced this action seeking declaratory judgment and injunctive relief. On August 25, 2016, the City Council passed an amendment to its City Code concerning wireless telecommunications facilities. See Pl.'s Rule 7.1 Response, at ¶ 12. On August 29, 2016, defendants' counsel wrote to plaintiff advising them of the adoption of the new ordinance and requesting plaintiff forward its application for review. Id. at ¶ 13. On September 8, 2016, plaintiff advised defendants that it would not resubmit its application and would proceed with litigation. Id. at ¶ 14.

### III.    LEGAL STANDARDS

*(a) Summary Judgment Standard.*

Summary judgment is appropriate where, construing the evidence in the light most favorable to the non-moving party, "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". FED. R. CIV. PRO. 56(c); Richardson

v. Selky, 5 F.3d 616, 621 (2d Cir. 1993). The party moving for summary judgment has the burden to establish "'that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law.'" Bowen v. National R.R. Passenger Corp., 363 F. Supp. 2d 370, 373 (N.D.N.Y. 2005) (quoting Rodriquez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995)). A fact is "material" for purposes of this inquiry if it: "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A party opposing summary judgment "'may not rest upon the mere allegations or denials of [their] pleading, but must set forth specific facts showing that there is a genuine issue for trial.'" Id. (quoting First Nat'l Bank of Ariz. v. Cities Svcs.Co., 391 U.S. 253, 288 (1968)). Those specific facts must be supported by "citing to particular parts of materials in the record." FED. R. CIV. PRO. 56(c)(1)(A). "[I]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50.

*(b) The Telecommunications Act.*

The TCA was enacted to "provide for a pro-competitive, de-regulatory national policy framework designed to accelerate rapidly private sector deployment of advanced telecommunications and information and services . . . by opening all telecommunications markets to competition . . ." H.R. Conf. Rep. No. 104-458, at 113 (1996). To this end, Congress enacted 47 U.S.C. § 332, "which limits the state and local government's authority to deny construction

- 4 -

of wireless telecommunications towers, and regulates how such decisions must be made." Sprint Spectrum, L.P. v. Willoth, 176 F.3d 630, 637 (2d Cir. 1999). Section 332(c)(7) of the TCA imposes procedural limitations on local zoning decisions and requires that local governments "act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request." 47 U.S.C. § 332(c)(7)(B)(ii). In 2009, the FCC, the administrative agency charged with implementing the TCA[1], clarified that a "reasonable period of time" is "presumptively, 90 days to process personal wireless service facility siting applications requesting collocations, and, also presumptively, 150 days to process all other applications." See In re Petition for Declaratory Ruling to Clarify Provisions of Section 332(c)(7)(B), 24 F.C.R.R. 13994 (2009) (the "2009 FCC Order") at ¶ 32. Further, in 2014, the FCC issued additional guidance to clarify that the 150 day time frame, commonly referred to as the "shot clock", "runs regardless of any moratorium." See Matter of Acceleration of Broadband Deployment by Improving Wireless Facilities Siting Policies, 29 F.C.C.R. 12865 (2014) (the "2014 FCC Order") at ¶ 265.

The TCA also mandates that zoning regulations or municipal actions shall not have the effect of prohibiting the provision of personal wireless services. See 47 U.S.C. § 332(c)(7)(B)(i)(II) (the "effective prohibition provision"). The Second Circuit has interpreted the effective prohibition provision to preclude "denying an application for a facility that is the least intrusive means for closing a significant gap in a remote user's ability to reach a cell site that provides access to land lines." Willoth, 176 F.3d at 643. Under the Willoth standard, an

---

[1] The FCC's interpretation of the "reasonable period of time" language is entitled to Chevron deference as a permissible construction of an ambiguous statute. See Up State Tower Co., LLC v. Town of Kiantone, New York, 2016 WL 7178321, at *4 (W.D.N.Y. Dec. 9, 2016) (citing City of Arlington v. F.C.C., 668 F.3d 229, 256 (5th Cir. 2012)).

- 5 -

applicant will prevail on a claim under the effective prohibition provision if it shows both that: (i) a significant gap exists in wireless coverage and (ii) its proposed facility is the least intrusive means for closing such significant gap. Id.

Pursuant to the TCA, a plaintiff that is "adversely affected by any final action or failure to act by a State or local government" that is inconsistent with the provisions of the TCA may commence an action "within 30 days after such action or failure to act." 47 U.S.C. §332(c)(7)(B)(v). The 2009 FCC Order provides that a "failure to act" occurs when "State or local governments do not act upon application within [the 150 shot clock period]" and "any court action must be brought by . . . day 180 on penalty of losing the ability to sue." 2009 FCC Order, at ¶¶ 32, 49. See also 2014 FCC Order, at ¶ 247 ("[F]ailure to meet the applicable timeframe presumptively constitutes a failure to act under Section 332(c)(7)(B)(v), enabling an applicant to pursue judicial relief within the next 30 days.")[2]

## IV.     DISCUSSION.

Verizon's complaint alleges that defendants: (i) failed to act or unreasonably delayed review of Verizon's Application in violation of Section 332 of the TCA and (ii) unlawfully prohibited Verizon from constructing a wireless service facility in violation of Section 332 of the TCA. In their motion for summary judgment, defendants argue that: (i) neither of plaintiff's claim are ripe for judicial review as Auburn has not yet reviewed plaintiff's Application and (ii) defendants otherwise acted reasonably in instituting the moratorium and were willing to consider plaintiff's

---

[2] As the 150 day shot clock period expired on August 1, 2016, Verizon's filing of its complaint on August 23, 2016 was properly within the 30 day period to commence an action under the TCA. Even if it could be argued that plaintiff's claims accrued earlier, at the time of the initial rejection of the application on March 4, 2016 or upon its subsequent return on April 8, 2016, defendants did not plead or raise the statute of limitations as an affirmative defense, and therefore, it is deemed waived. See Chimblo v. Comm. of Internal Revenue, 177 F.3d 119, 125 (2d Cir. 1999) ("As a general matter, the statute of limitations is an affirmative defense that must be pleaded; it is not jurisdictional."); Masterpage Comm., Inc. v. Town of Olive, NN, 418 F. Supp. 2d 66, 76 n. 5 (N.D.N.Y. 2005) (D.J. Mordue).

Application upon the expiration of the moratorium.  Defendants assert that their actions were consistent with the requirements of the TCA.  See Defs.' Mem. Supp. Summ. J. at 5.

### (A) Failure to Act Claim.

Defendants contend that as the moratorium began on March 3, 2016, the City could not accept the Application received by Verizon on March 4, 2016.  Therefore, they argue that the 150 day shot clock never began because the Application was not "duly filed".  As a result, defendants argue that this case is not ripe for judicial review.

### (i) Plaintiff's Action is Ripe for Judicial Review.

The interpretation of the TCA proposed by the defendants is clearly at odds with the intent of the TCA and the FCC orders and therefore must be rejected.  Review of the TCA and FCC rules and regulations both unquestionably support the conclusion that Auburn's moratorium does not toll the shot clock period.

The Supreme Court has found that in passing the TCA, "Congress impose[d] specific limitations on the traditional authority of state and local governments to regulate the location, construction and modification of [wireless telecommunications] facilities."  City of Arlington v. FCC, 133 S. Ct. 1863, 1866 (2013) (internal quotations omitted).  The TCA implements Congress' intent to encourage the rapid deployment of wireless telecommunications and seeks "to stop local authorities from keeping wireless providers tied up in the hearing process through invocation of state procedures, moratoria or gimmicks."  Masterpage Comm., Inc. v. Town of Olive, 418 F. Supp. 2d 66, 77-80 (N.D.N.Y. 2005) (D.J. Mordue) (quoting Lucas v. Planning Bd. of Town of LaGrange, 7 F. Supp. 2d 310, 321-22 (S.D.N.Y. 1998)).

Review of the 2014 FCC Order in particular makes clear that the defendants' argument concerning the effect of the moratorium borderlines on frivolous.  The 2014 FCC Order states

that "the presumptively reasonable time frame begins to run when an application is first submitted . . .". 2014 FCC Order, at ¶ 258.  Further, while the FCC recognizes the need of local municipalities to update their zoning regulations, the 2014 FCC Order expressly provides that the 150 shot clock "runs regardless of any moratorium." Id. at ¶ 265.   In doing so, the FCC expressly rejects the recommendation made by many municipal commenters that a moratorium should toll the shot clock or otherwise affect the right of a wireless provider to seek legal redress when the shot clock expires without local government action. See id. at ¶¶ 265, 266.   The fact that the local moratorium was passed prior to the submission of the application by the wireless provider does not modify the obligation of the local government to act on an application in a reasonable period of time. See id. at ¶ 266 ("We recognize that new technologies may in some cases warrant changes in procedures and codes, but we find no reason to conclude that the need for any such change should freeze all applications.").  The 2014 Order is clear that "any moratorium that results in a delay of more than 90 days for a collocation application or 150 days for any other application will be presumptively unreasonable." Id. at ¶ 267.

Simply put, a municipality may not avoid or stop the shot clock period by enacting a moratorium.  While local moratoria on applications may be necessary and advisable to permit a municipality to update applicable zoning regulations, the moratorium does not stop the shot clock period, regardless of whether an application is received before or after the moratorium was enacted.

Given that the stated purpose of the TCA is to ensure that local governments act on applications "within a reasonable period of time", it would be counter to such purpose to endorse defendants' interpretation.  A local government may not unilaterally decide not to "file" or accept a properly submitted application, by reason of a moratorium or otherwise, and effectively toll the

- 8 -

shot clock period. As a result, the shot clock period started on March 4, 2016, when the Application was properly submitted to the defendants pursuant to the then existing City Code.

As Verizon's Application was received by defendants on March 4, 2016, the 150 day shot clock expired on August 1, 2016. Auburn admits that it declined to even accept the Application at any time during the 150 day shot clock period, despite three requests from Verizon to do so. It is not disputed that Verizon's application was not processed, reviewed or otherwise acted upon by Auburn within the shot clock period and thus the City is presumed to have unreasonably delayed Verizon's Application in violation of Section 332 of the TCA.

*(ii) Defendants' Delay was Unreasonable.*

Defendants asserts that even if the 150 day shot clock period was violated, its actions were reasonable and the TCA's presumption of unreasonable delay should be rebutted.

Defendants allege that on March 1, 2016, the Planning Board passed a resolution issuing site approval for a new telecommunications facility and tower to be located on Allen Street in Auburn (the "Allen Street Tower"). The approval of the Allen Street Tower was met with community opposition and a lawsuit was filed in New York State court listing both defendants and the wireless operator as co-defendants. Defendants claim that the six month moratorium passed on March 3, 2016 resulted from the public opposition and litigation resulting from the Allen Street Tower and was intended to give Auburn staff time to incorporate an ordinance into its ongoing comprehensive revision of the City Code. Defendants also highlight that the time delay from the passage of the moratorium on March 3, 2016 until the adoption of the amendments to the City Code on August 25, 2016 consisted of 175 days and argue that their violation, if any, was only 25 days.

- 9 -

In its 2009 Order, the FCC recognized that "certain cases may legitimately require more processing time" and therefore provided that the deadlines could be extended by agreement of the applicant or that the shot clock may be tolled to obtain certain required information. See 2009 FCC Order, at ¶ 3. The FCC also clarified that the deadlines were only presumptively reasonable, and that "local authority will have the opportunity, in any given case that comes before a court, to rebut the presumption that the established timeframes are reasonable" based upon the "unique circumstances in individuals cases." Id. at ¶¶ 42, 44.

Defendants have completely failed to rebut the presumption that their delay was unreasonable. "The Shot Clock Ruling contemplates not just that a local government will take some action on an application within the deadline, but that it will 'resolve [the] application' before the deadline." New Cingular Wireless PCS, LLC v. Town of Stoddard, N.H., 853 F. Supp. 2d 198, 203-04 (D.N.H. 2012) (quoting 2009 FCC Order at ¶ 38). Under the provisions of the TCA and FCC Orders, the local municipality has 150 days in which to promptly review an application and make its final determination, consistent with local law, the TCA and federal rules and regulations. In 175 days of review, Auburn did not review or consider Verizon's Application at all, much less complete its review. Defendants made no requests for information relative to the Application and took no action relative to the Application at any point during the 150 day shot clock period. On three separate occasions, defendants expressly rejected the Application based solely on their seriously flawed interpretation of the TCA and refused to fulfill their obligations under federal law.

Neither the existing litigation concerning the Allen Street Tower nor the fact that defendants were willing to consider Verizon's Application after 175 days reasonably justify their refusal to consider the Application pursuant to the requirements of the TCA and the FCC Orders

within the 150 day shot clock period. See American Towers, Inc. v. Wilson County, 2014 WL 28953, at *13 (M.D. Tenn. Jan. 2. 2014) (County's informal policy of deferring action on siting application because of pending litigation, between the wireless provider and the county or a third party, finds "no support in the TCA" and is insufficient to rebut the presumption of unreasonable delay). Defendants have failed to demonstrate what, if any, changes were made to the City Code concerning wireless facilities or show that the appropriate six month delay in accepting or considering any new applications, a period of time which wholly encompasses the shot clock period, was both necessary and appropriate given the unique circumstances facing Auburn. As a result, defendants have failed to rebut the presumption that their delay was unreasonable and their actions constituted a failure to act or unreasonably delay in violation of the TCA.

      (B) *Unlawful Prohibition Claim*.

Verizon contends that the actions of the defendants prevented it from closing a significant gap in service, and thus, effectively prohibited service. The TCA requires that local zoning activity "shall not prohibit or have the effect of prohibiting the provision" of wireless services. 47 U.S.C. § 332(c)(7)(B)(i)(II).

      (i) *Plaintiff's Claim is Ripe for Judicial Review*.

Defendants argue that Verizon's unlawful prohibition claim is not ripe for judicial review since defendants never made a final determination concerning plaintiff's Application. In order to prove a claim of effective prohibition, plaintiff must show that its application has been rejected and that any additional efforts are so unlikely to be successful, that it would be a waste of plaintiff's effort to try. Up State Tower Co., LLC v. The Town of Kiantone, New York, 2017 WL 957208, at *7 (W.D.N.Y. March 13, 2017). Defendants assert that plaintiff's Application has never been "rejected".

- 11 -

However, an effective prohibition claim under the TCA exists where a local government has enacted a moratorium and refuses to process an application. See APT Minneapolis, Inc. v. Stillwater Twp., 2001 WL 936193, at *26 (D. Minn. Aug. 15, 2001); Sprint Spectrum L.P. v. Town of Farmington, 1997 WL 631104, at *17 (D. Conn. Oct. 6, 1997); Sprint Spectrum L.P. v. Jefferson County, 968 F. Supp. 1457, 1466-68 (N.D. Al. 1997). Therefore, for the same reasons noted with regard to the failure to act claim, Verizon has demonstrated that its unlawful prohibition claim is ripe for judicial review.

*(ii) Plaintiff has established their Effective Prohibition Claim.*

"Under New York law, 'cellular telephone companies, such as [plaintiff], are classified as 'public utilities' for purposes of zoning applications' and, as such, '[a] zoning board of appeals has a narrower range of discretion in dealing with special permit applications filed by utilities than is true in the case of the generality of applications.'" Omnipoint Comm., Inc. v. Vill. of Tarrytown Planning Bd., 302 F. Supp. 2d 205, 215 (S.D.N.Y. 2004) (quoting Omnipoint Comm., Inc. v. Common Council of the City of Peekskill, 202 F. Supp. 2d 210, 222 (S.D.N.Y. 2002)). The Second Circuit has interpreted the effective prohibition provision of the TCA to mean that local governments may not regulate personal wireless service facilities in such a way as to prohibit remote users from reaching "facilities necessary to make and receive phone calls." Sprint Spectrum, L.P. v. Willoth, 176 F.3d 630, 637 (2d Cir. 1999). "In other words, local governments must allow service providers to fill gaps in the ability of wireless telephone users to have access to land-lines." Id. However, a local government may reject an application "if the service gap can be closed by less intrusive means." Id.

Verizon's Application, which was submitted as an Exhibit, meets the applicable requirements of the TCA. See Application, Affirmation of Robert Burgdorf, Exhibit 1. The

- 12 -

Application seeks to construct a 100 foot monopole and related site improvements on the Highland Park golf site. The Site is consistent with the adjacent land uses, including a high school, community college and golf course.

The Application provides significant information, including Radio Frequency propagation maps, which clearly demonstrates a significant gap in its service in the City of Auburn and related capacity deficiencies, an area along Franklin Street and Route 5 which includes major thoroughfares, residences, businesses and schools. See Application, Declaration of Emily McPherson. In addition, the Application establishes that there is no less intrusive means to fill the significant gap in coverage other than to construct and operate a wireless facility at the Site. See Application; McPherson Decl. ¶¶ 15-28.

As a result, defendants failure to consider Verizon's Application had the effect of prohibiting wireless service within the City of Auburn in violation of the TCA. Therefore, plaintiff is entitled to summary judgment concerning its effective prohibition claim.

*(C) Appropriate Remedy.*

Having found that Verizon is entitled to judgment as a matter of law on the claims addressed above, the appropriate remedy must be determined. Verizon argues that the appropriate remedy pursuant to the TCA is an order directing Auburn and its boards and directors to take appropriate steps to approve the Application which has been previously submitted. Defendants contend even if its actions are deemed to be in violation of the TCA, the Application should be resubmitted and considered pursuant to Auburn's revised City Code within 150 days.

"The standard for a permanent injunction is similar to the standard for a preliminary injunction: (1) irreparable harm and (2) success on the merits." Nextel Partners, Inc. v. Town of Amherst, NY, 251 F. Supp. 2d 1187, 1200 (W.D.N.Y. 2003) (citing Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979)). Courts have "consistently held that a mandatory injunction is an appropriate remedy for violations of the TCA." Nextel Partners, Inc.

251 F. Supp. 2d at 1200 (citing <u>Cellular Telephone Company v. The Town of Oyster Bay</u>, 166 F.3d 490, 496 (2d Cir. 1999)); <u>see also</u> <u>Preferred Sites, LLC v. Troup County</u>, 296 F.3d 1210, 1222 (11th Cir. 2002); <u>Nat'l Tower, LLC v. Plainville Zoning Bd. of Appeals</u>, 297 F.3d 14, 21-22 (1st Cir. 2002); <u>Omnipoint Comm., Inc. v. Planning & Zoning Comm. of the Town of Wallingford</u>, 83 F. Supp. 2d 306, 312 (D. Conn. 2000).  Such injunction usually takes the form of an order directing the defendants to issue the relative permits, which "serves the [TCA's] stated goal of expediting resolution of this type of action." <u>Oyster Bay</u>, 166 F.3d at 497.  The FCC has also endorsed such approach, stating that "injunctions granting an application may be appropriate in many cases" and that local governments "will risk issuance of an injunction granting the application" if they do not consider such application in conformance with the TCA and the FCC Orders.  2009 FCC Order, at ¶¶ 38 - 39.

   Verizon has clearly established that defendants violated the TCA in both failing to act on the Application and in effectively prohibiting wireless service in the City of Auburn. Additionally, defendants have failed to demonstrate any deficiencies with Verizon's Application or otherwise articulate a community interest which would be negatively harmed if a mandatory injunction were issued.  Defendant failed to submit a copy of the relevant City Code as it existed in March 2016 or the revised City Code which was enacted in August 2016 and failed to express any issues which the Application may have raised.  Instead, quiet shockingly, defendants asserted at oral argument that they did not even retain a copy of the plaintiff's Application when they returned it to plaintiff on March 4, 2016, instead relying upon their dubious legal argument that they could not file the Application due to the moratorium.  Regardless, defendants again received plaintiff's application in February 2017 as part of this action and have failed to identify any deficiencies which would require further City consideration.

   Given the City's flagrant disregard to its obligations under the TCA, its refusal to even take the first step of consideration of plaintiff's application within 175 days of its submission, this

is not a case where the locality was merely conducting good faith information gathering concerning an application. Defendants' persistent and affirmative violation of both the text and spirit of the TCA must result in its relinquishment of its right to obtain further review of plaintiff's Application.[3]

As a result, directing that the Application be resubmitted to defendants with a new 150 day shot clock period, as defendants request, would serve no useful purpose and would greatly prejudice Verizon by further delaying its ability to provide service. A mandatory injunction is an appropriate remedy.

## V.     CONCLUSION

Defendants' actions in refusing to act on Verizon's Application violated the TCA and the corresponding FCC Orders. Further, defendants' proffered rationale for their delay is insufficient to rebut the presumption of unreasonableness created under the TCA. Lastly, plaintiff has established that defendants' actions effectively prohibit it from providing telecommunication services in violation of the TCA. As a result, a mandatory injunction directing defendants to approve plaintiff's application and issue all applicable permits and/or approvals is appropriate.

Therefore, it is ORDERED that:

1. Defendants' February 28, 2017 motion for summary judgment is **DENIED** in its entirety;

2. Plaintiff's February 28, 2017 motion for summary judgment is **GRANTED**;

A. Plaintiff's application shall be considered received by the defendants as of March 4, 2016;

B. Defendants shall approve plaintiff's application to construct and operate a wireless

---

[3] It is noted that a mandatory injunction does deprive both the public the ability to provide its input at public hearings required before the Planning Board and Zoning Board and input from Cayuga County pursuant to New York General Municipal Law 239-m. However, had defendants complied with the requirements of the TCA, both parties would have had sufficient time to provide input.

communications facility on property located at 246 Franklin Street, Auburn, New York, including a 100 foot high monopole tower and other site improvements;

C. Approval of the application shall be pursuant to the City Code as it existed on March 4, 2016 and shall be deemed to have been approved prior to the effective date of Chapter 300 of the current City Code, which shall have no effect on the plaintiff's application and approval;

D. The approval of the application shall include: (i) site plan approval by the City of Auburn Planning Board, (ii) the granting of a use variance from the City of Auburn Zoning Board of Appeals and (iii) any other municipal approval or permission required by the City of Auburn and its boards or officers, including but not limited to, a building permit;

E. The approval of the application shall be made on or before **July 10, 2017**;

F. Certification of the above approval of the application shall be filed by the defendants with the Clerk of the Court on or before **July 11, 2017**; and

3. Jurisdiction shall be retained to monitor implementation of and to enforce this order.

IT IS SO ORDERED.

_____
United States District Judge

Dated:  June 28, 2017
        Utica, New York